## THE TOWN OF BATH *vs.* THE TOWN OF HAVERHILL.

If a town appoint a person to the office of hogreeve, who is a minor, the town
cannot afterwards object to his competency.
Quære, whether a minor is competent to fill any elective office in this state.

THIS was an action of assumpsit for relief furnished to *John Hacket* and family, who were alleged to be paupers.

At the trial here, in May A. D. 1822, the parties agreed, that said *John* was the illegitimate son of one *Esther Simpson*, and was born in Haverhill, on the 10th of April, A. D. 1790.

When about eight months old, he was taken to Bath, and continued in the family of one *John Charles* an adopted child till A. D. 1810. No indenture or written agreement existed in respect to the pauper; and on the 21st of September, A. D. 1809, he was legally married, and, though a minor, was in March, A. D. 1810, elected by the town of Bath to the office of hogreeve, was duly sworn to perform the duties of it, and continued there during the year.

The parties further agreed, that a default or nonsuit should be entered, according to the opinion of the court as to the settlement of *John Hacket.*

*Goodall,* counsel for the plaintiffs.

*Bell,* for the defendants.

WOODBURY, J. The birth of the pauper in Haverhill, in A. D. 1790, gave him, being illegitimate, a *prima facie* settlement there.(1) By our statute of January 1st, A. D. 1796, this rule is now altered and a provision is also made, that any person, who shall " be chosen and actually serve " one year in the office of clerk, &c. shall thereby gain a " settlement in said town."(2) The office of hogreeve is one embraced by the statute, and the pauper in this case must be considered to have actually served one year in that office, as he was duly chosen, sworn, and ready in the town during the whole year to perform any duties appurtenant to the office.

His competency to fill the office on account of his minority may be somewhat questionable. It is true, the statute as to town officers does not expressly make full age a qualification.(3) Nor does the statute as to settlements make it so except in the case of a settlement acquired by the payment of taxes.(4) By the common law, also, infants might execute ministerial offices. *Co. Litt.* 3, *b.*—*Cro. Ch.* 279, 557, *Young vs. Stowel,* & *Young vs. Fowler.*

In some books, this is said to rest on the ground, that they require diligence only, and not discretion ; in others on the ground, that they may be executed by deputy ; and in others, because an oath of office is not necessary. *Co. Litt.* 172, *and section* 259.—*Reeve's Dom. Rel.* 261.

But whatever may be the true reason there, the office in question cannot be executed by deputy, or without an oath ; and the duties of it, as well as the penalties for not accepting it, seem improper to be imposed upon a person not arrived at years of discretion.(5) The offices in England, which can be held by minors, seem to be those obtained by inheritance, or purchase, or devise, and not by election. Infants here are expressly forbidden to vote for any elective officers.(6) And it would be somewhat derogatory and absurd to require higher qualifications in the electors than in the elected.

(1) 1 N. H. Rep. 261.

(2) 1 N. H. Laws 362.

(3) 1 N. H. Laws 240.

(4) 1 N. H. Laws 362, 363.

(5) 1 N. H. Laws 407.

(6) 1 N. H. Laws 254.

But however this may be, we think, that the town of Bath are now estopped to deny that the pauper was duly qualified to fill the office. They themselves thought proper to select him, they have recognized him as competent, and should not be permitted to blow both hot and cold in relation to the same person and the same transaction. 3 *D. & E.* 365. —*Johnson vs. Wilson, ante.*—1 *Phil. Ev.* 170, 171.

The reasons for this principle would not preclude third persons, when interested, from objecting to his competency; but here the very persons object who conferred on him the trust; and such an attempt to avoid their own doings cannot be tolerated on any sound legal principles. Our construction is also required by public policy, in order to produce greater caution in all elective bodies concerning the qualifications of those on whom they bestow their suffrages; and the penalty for negligence, improvidence or prejudice on such occasions is sufficiently light, if the voters are only made to abide by all the ordinary consequences of their own voluntary acts.

*Plaintiffs nonsuit.*

(3) 16 East 112, How vs. Bowes et al.